IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

STERLING D. BROWN                                                                    PLAINTIFF

VS.                                         CASE NO. 05-CV-1068

AMERICA'S CAR-MART, INC.                                               DEFENDANT

### MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendant America's Car-Mart, Inc. (Doc. No. 27). The Plaintiff has filed a response. (Doc. No. 32). The Defendant has filed a reply to Plaintiff's response. (Doc. No. 35). The matter is ripe for consideration.

### BACKGROUND

Car-Mart is a publicly traded company that operates a "buy here-pay here" car-dealership business with ninety lots located in nine states. Sterling Brown is an African-American male who began working for Car-Mart in December 2000, as a Sales Associate at its Camden, Arkansas, car lot. While in Camden, Brown reported to the lot Manager, Mike Lewis and the Assistant Manager, Chris Williams. In April 2001, Brown was promoted to the position of Accounts Representative at the Camden lot.

In July 2001, Brown was transferred to Car-Mart's lot in El Dorado and promoted to the position of Senior Accounts Representative. When Brown first moved to the El Dorado lot, he reported to the lot Manager, Mervin Mast, and an Assistant Manager named Darlene.[1] During

---

[1] Brown could not recall Darlene's last name.

the time that Brown was in El Dorado, the assistant manger's position became available on two occasions. Each time it came open, Brown asked to be promoted into the position. However, he was not selected to fill the job. Rather, the first time the job was available, a white female named Katie was selected for the job. Then, later when the job came open again, an African-American male named Jay Tatum was selected for the job. During this time, Brown also asked to be placed in the company's manager trainee program and asked to be considered for a management position at one of the new lots the company was opening in Texas. Brown was not selected for the manager trainee program nor was he given a management position at a new lot in Texas.

     In July 2002, Brown was promoted to an assistant manager's position at Car-Mart's Little Rock, Arkansas, lot. While at the Little Rock lot, Brown reported to the lot Manager, Danny Lyle. On two occasions, Brown complained to Eddie Hight, Car-Mart's Chief Operating Officer, that the Little Rock lot was understaffed. Brown claims that the lot should have had 21 or 22 employees, but that it only had six. Brown also claims that Hight did nothing to fix the problem. Eventually, the lot Manager, Danny Lyle, was discharged. During this same time, Brown was told that he could remain employed with Car-Mart as the Satellite Manager of the car lot in Hot Springs or be terminated. Brown decided to stay with Car-Mart and accepted the position in Hot Springs.

     In March 2003, Brown became the Satellite Manager of Car-Mart's Hot Springs lot. This car lot was a satellite of the company's Benton, Arkansas, lot. While at the Hot Springs lot, Brown reported to the Manager of the Benton lot, Aaron Davis. About a month after being transferred to Hot Springs, Brown attended a meeting at the Benton lot where someone allegedly said, "The black man has trouble getting somewhere in the company." Brown did not make this

statement and does not recall who made it. Thereafter, Brown was called to three different meetings with Car-Mart's management–one in Hot Springs, one in Benton and one in North Little Rock. At each of these meetings, Brown was asked about the statement and how he felt about it. Brown told management that he did not make the statement but that he agreed with it.

In May 2003, Brown received a negative appraisal concerning the appearance and performance of the car lot. He was also cautioned by John Harrison, one of Car-Mart's Vice Presidents of Operations, that he needed to be careful working around a young white female.

In August 2003, two female associates under Brown's supervision in Hot Springs complained to Car-Mart that Brown was sexually harassing them. They each alleged that Brown had made inappropriate sexual remarks toward them. An investigation was conducted by Car-Mart that consisted of interviewing employees and taking their written statements. On August 20, 2003, Brown was called to a meeting in Little Rock regarding the harassment complaints against him. When Brown was informed of the associates' allegations, he denied them. He then provided Car-Mart with a written statement in which he stated that on a couple of occasions he did talk to one of the associates about his personal life and did tell her about looking between a customer's legs when the customer came in to make a payment. Car-Mart discharged Brown for sexual harassment. According to Brown, Eddie Hight also told him that "Since you feel a black man can't get no where in this company, you're being terminated."

On October 15, 2003, Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). In his charge, Brown checked the boxes claiming discrimination based on race and retaliation. He stated that he believed that he was disciplined and discharged because of his race and in retaliation for complaining about

3

discrimination. Brown did not allege discrimination based upon a failure to promote. On February 12, 2004, the EEOC issued Brown a Right to Sue letter.

On February 23, 2004, Brown filed suit in the Circuit Court of Pulaski County, Arkansas. In his complaint, Brown claimed that Car-Mart discriminated against him when it terminated him in August 2003 in violation of the Arkansas Civil Rights Act, Ark. Code Ann. §16-123-101 *et seq*. On May 12, 2005, Brown amended his complaint to include a failure to promote claim and alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981. On May 18, 2005, the case was removed to the United States District Court for the Eastern District of Arkansas and, on August 10, 2005, it was transferred to this Court. In his complaint, Brown alleges that Car-Mart discriminated against him on the basis of retaliation and race discrimination when it failed to promote him, transferred him to Hot Springs and discharged him on August 20, 2003, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), 42 U.S.C. § 1981, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* (ACRA). The matter is now before the Court on Car-Mart's Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, despositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme

Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

In his Complaint, Brown alleges that Car-Mart discriminated against him in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.,* 42 U.S.C. § 1981, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* (ACRA). In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination.

Brown claims that he was discriminated against by Car-Mart on the basis of retaliation and race discrimination when it failed to promote him, transferred him to Hot Springs and discharged him on August 20, 2003. The Court will address each of these claims separately.

*Brown's Failure to Promote Claims*

In order to establish his *prima facie* case of discrimination based on a failure to promote, Brown must show 1) that he is a member of a protected class; 2) that he was qualified and applied for a promotion to an available position; 3) that he was rejected despite his qualification; and 4) that similarly situated employees, not part of the protected group, were promoted. *Gentry v. Georgia-Pacific Corp.,* 250 F.3d 646, 650 (8th Cir. 2001). It appears that Brown satisfies the

---

[2] Claims under §1981 and the ACRA are analyzed using the same burden-shifting framework as Title VII claims. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n. 2 (8th Cir. 2003)(applying *McDonnell Douglas* to §1981 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002)(applying *McDonnell Douglas* to ACRA claim). Therefore, the Court's analysis of Brown's Title VII claims equally applies to his claims under §1981 and the ACRA.

first three elements of his *prima facie* case. Therefore, the Court will concentrate on the fourth element–whether there are similarly situated employees, not members of the protected class, that were promoted instead of Brown.

Brown claims that he was discriminated against when Car-Mart failed to promote him to its manager trainee program. He claims that Car-Mart only promoted whites into the program. However, this conclusory statement is not enough to establish the fourth element of his *prima facie* case. He must set forth specific facts showing that similarly situated employees who were not members of the protected class were promoted into the program instead of him. He has not done this. In fact, Brown has not identified anyone, similarly situated or not, that was promoted into the manager trainee program when he wanted that position. Thus, Brown has failed to establish the fourth element of his *prima facie* case of discrimination based on Car-Mart's failure to promote him to the company's manager trainee program.

Brown claims that he was discriminated against when Car-Mart failed to promote him to a management position at one of its new lots in Texas. He claims that the "ones that was put in those positions weren't black." However, this conclusory statement is not enough to establish the fourth element of his *prima facie* case. He must set forth specific facts showing that similarly situated employees who were not members of the protected class were promoted into those management positions in Texas instead of him. He has not done this. In fact, Brown has not identified anyone, similarly situated or not, that allegedly received a management position in Texas when he wanted the position. Thus, Brown has failed to establish the fourth element of his *prima facie* case of discrimination based on Car-Mart's failure to promote him to a management position in Texas.

Brown also claims that he was discriminated against when Car-Mart failed to promote him to the Assistant Manager's position in El Dorado. He claims that Car-Mart gave the job to a white female named Katie and an African-American male named Jay Tatum.[3] However, Brown states that he did not know what Katie's qualifications were, only that she was a Senior Accounts Representative at Paragould. Brown has failed to set forth specific facts showing how Katie was similarly situated to him. Therefore, he has failed to establish the fourth element of his *prima facie* case of discrimination based on Car-Mart's failure to promote him to the Assistant Manager's position in El Dorado.

Brown has failed to make out a *prima facie* case of discrimination based upon Car-Mart's failure to promote him. Therefore, these claims must fail as a matter of law.[4]

### Brown's Retaliatory Transfer Claim

A claim for retaliation pursuant to Title VII is not based upon race discrimination, but instead upon "an employer's actions taken to punish an employee who makes a claim of discrimination." *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). To establish a *prima facie* case of retaliation under Title VII, Brown must show 1) that he participated in a protected activity; 2) that Car-Mart took an adverse employment action against him; and 3) that there is a causal connection between the protected activity and the adverse employment action.

---

[3] It is apparent that Brown cannot establish a *prima facie* case of discrimination in regards to Mr. Tatum's promotion to Assistant Manager because Mr. Tatum is a member of the protected class. Therefore, the Court will not only address Brown's failure to promote claim in regards to Katie.

[4] In light of the above analysis and ruling in regards to Brown's Title VII failure to promote claims, the Court finds that his claims for failure to promote under 42 U.S.C. § 1981 and the ACRA must also fail.

*Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002).  Brown alleges that he was transferred to Hot Springs because he complained about understaffing at the Little Rock lot.  Such a complaint does not amount to a statutory protected activity.  Brown was not complaining about discrimination; rather, he was asking for additional staff to help run the Little Rock lot.  Brown did not engage in a protected activity, and, thus, cannot satisfy the first element of his *prima facie* case of retaliation under Title VII.  Therefore, Brown's retaliation claim in regards to his transfer to Hot Springs must fail.[5]

### *Brown's Racially-Discriminatory Discharge Claim*

Brown alleges that he was discharged from his job because of his race in violation of Title VII.  In order to establish a *prima facie* case of racially-discriminatory discharge under Title VII, Brown must show 1) that he belonged to the protected class; 2) that he was meeting the legitimate expectations of his employer; 3) that he suffered an adverse employment action; and 4) that the discharge occurred under circumstances giving rise to an inference of discrimination.  *Wheeler v. Aventis Pharmaceuticals,* 360 F.2d 853, 857 (8th Cir. 2004).  Car-Mart argues that Brown has not satisfied the second element of his *prima facie* case.  It contends that he was not meeting the company's legitimate expectations in light of the fact that two associates accused Brown of sexual harassment.  Car-Mart's handbook prohibits all associates from engaging in unwelcome sexual conduct or making unwelcome sexual overtures, either visual, verbal or physical.  It also prohibits any course of conduct which is unbecoming or might be perceived as inappropriate or unbecoming.  In this case, Brown was accused of sexually harassing two Car-

---

[5] In light of the above analysis and ruling in regards to Brown's Title VII retaliatory transfer claim, the Court finds that his claims for retaliatory transfer under 42 U.S.C. § 1981 and the ACRA must also fail.

Mart associates. In a written statement to the company, Brown admitted to some of the associates' accusations. Brown clearly was not meeting Car-Mart's legitimate expectations when he looked between a customer's legs and then preceeded to tell an associate about the incident. He has failed to establish the second element of his *prima facie* case of discriminatory discharge. Therefore, this claim must fail as a matter of law.[6]

Even if Brown could make out his prima facie case of discriminatory discharge, this claim would still fail. Car-Mart has articulated a legitimate nondiscriminatory reason for discharging Brown–violation of the company's sexually harassment policy, and Brown has not produced evidence that Car-Mart's reason for firing him was really a pretext for discrimination.

In order to show pretext, Brown has pointed to two white Car-Mart employees, Randy Jackson and John Harrison, whom he contends were similarly situated to him and who were treated differently by Car-Mart. However, these employees must be similarly situated in all relevant aspects. *Harvey v. Anheuser-Bush, Inc.,* 38 F.3d 968, 972 (8th Cir. 1994). They must have dealt with the same supervisor, have been subjected to the same standards and engaged in the same conduct without any mitigating or distinguishing circumstances *Lynn v. Deaconess Med. Ctr.-W. Campus,* 160 F.3d 484, 487-88 (8th Cir. 1998). Here, the parties did not have equivalent positions in the company and did not report to the same supervisor. Car-Mart also determined, after its investigation of the allegations, that Brown was involved in sexually harassing an associate under his supervision. In fact, Brown admitted that he engaged in some of the inappropriate behavior. Therefore, only those individuals who were determined to be

---

[6] In light of the above analysis and ruling in regards to Brown's Title VII discriminatory discharge claim, the Court finds that his claims for discriminatory discharge under 42 U.S.C. § 1981 and the ACRA must also fail.

involved in sexually harassing conduct and who were not fired are similarly situated to Brown. There is no evidence that Car-Mart made a determination that Jackson or Harrison were involved in sexually harassing behavior and then refused to fire them. It is apparent from the record that Jackson and Harrison were not similarly situated to Brown in all relevant aspects. Thus, Brown has failed to show that Car-Mart's proffered reason for his termination was false and that discrimination was the real reason for his discharge. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Brown's claim that he was discharged because of his race must fail as a matter of law.[7]

### Brown's Retaliatory Discharge Claim

Brown also claims that he was discharged in retaliation for his agreeing with the statement that a "black man has trouble getting somewhere in the company." As stated above, a claim for retaliation pursuant to Title VII is not based upon race discrimination, but instead upon "an employer's actions taken to punish an employee who makes a claim of discrimination." *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). To establish a *prima facie* case of retaliation under Title VII, Brown must show 1) that he participated in a protected activity; 2) that Car-Mart took an adverse employment action against him; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002). Car-Mart claims that Brown cannot establish his *prima facie* case of retaliation. However, even if Brown could make out his prima facie case of retaliation, this claim would still fail. Car-Mart has articulated a legitimate

---

[7] In light of the above analysis and ruling in regards to Brown's Title VII discriminatory discharge claim, the Court finds that his claims for discriminatory discharge under 42 U.S.C. § 1981 and the ACRA must also fail.

nondiscriminatory reason for discharging Brown–violation of the company's sexually harassment policy, and Brown has not produced evidence that Car-Mart's reason for firing him was really a pretext for discrimination.

### Brown's Disparate Treatment Claim

Brown also claims that Car-Mart treated him less favorably than white employees in terms of employment opportunities and advancement within the Company. However, the evidence presented by Brown contains only general conclusory allegations against Car-Mart made by former Car-Mart employees. It does not contain specific, tangible evidence in support of Brown's claim. In fact, the evidence before the Court does not show that Brown was treated less favorably than similarly situated members of the unprotected class. Rather, it shows that during his time with Car-Mart, Brown was given various employment/advancement opportunities which he readily took advantage of. In fact, it shows that Brown steadily advanced within the company being promoted up to the positions of assistant manager and satellite manger. It is apparent that Brown was not promoted every time he sought a position; however, there is no evidence from which the Court can infer that these advancement decisions were based upon intentional discrimination.

It appears to the Court that this disparate treatment claim is less about possible race discrimination than it is about Car-Mart's business decisions regarding Brown being fundamentally unfair or arbitrary. However, it has long been recognized, that "the employment discrimination laws have not vested in the federal courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that these judgments involved intentional discrimination." *Hutson v.*

*McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995)(citations omitted).  There is no evidence from which the Court can infer that Brown was the victim of such intentional discrimination.  Therefore, his claim for disparate treatment must also fail as a matter of law.[8]

## CONCLUSION

Based upon the foregoing reasons, the Court finds that Defendant America's Car-Mart's Motion for Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 21st day of February, 2007.

                                                      /s/Harry F. Barnes
                                                      Hon. Harry F. Barnes
                                                      United States District Judge

---

[8] In light of the above analysis and ruling in regards to Brown's Title VII disparate treatment claim, the Court finds that his claims for disparate treatment under 42 U.S.C. § 1981 and the ACRA must also fail.